**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LOUIS CABALLERO                  :        CIVIL ACTION
                                 :
    v.                           :        NO. 04-2190
                                 :
LOUIS FOLINO, <u>et al.</u>             :

<u>MEMORANDUM AND ORDER</u>

Kauffman, J.                                            March 10    , 2008


        Now before the Court is the Petition of Louis Caballero ("Petitioner") for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  Petitioner is incarcerated in the State

Correctional Institution at Waynesburg, Pennsylvania.  For the reasons that follow, the Petition

will be denied.


I.      **BACKGROUND**

        On May 24, 1996, a jury sitting in the Court of Common Pleas of Philadelphia County

convicted Petitioner of robbery, aggravated assault, and criminal conspiracy.[1]  On September 11,

---

[1]      The trial court described the facts leading to the charges as follows:
        On February 12, 1995, at approximately 9:45 p.m., [Petitioner], along with a
cohort, Joseph Wieszczynski, both wearing ski masks, entered Mick's Restaurant,
located in the basement area of the Bellevue Hotel at 200 South Broad Street.  At that
time, waiter Choong Won "David" Lee was closing down for the night: wiping down
countertops, and tables, etc.  [Petitioner] grabbed Mr. Lee, put him in a headlock, and
dragged him towards the back of the restaurant.  A brief struggle ensued, Mr. Lee
pulled away from [Petitioner] and ran towards the front of the restaurant.  [Petitioner]
followed, grabbed a knife from one of the tables, and after yet another struggle,
stabbed Mr. Lee just below the eye with the knife.  [Petitioner] then proceeded to the
lower level of the restaurant to join his compatriot.

1

1996, Petitioner was sentenced to serve consecutive terms of imprisonment of five to ten years on the robbery charge, five to ten years on the aggravated assault charge, and two to five years on the criminal conspiracy charge.  On February 18, 1998, the Superior Court of Pennsylvania affirmed Petitioner's convictions.  On September 28, 1998, the Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal.

On August 4, 1999, Petitioner filed a pro se petition under the Pennsylvania Post-Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541, et seq. ("PCRA").  The Court of Common Pleas appointed counsel for Petitioner.  On May 14, 2000, Petitioner's PCRA counsel filed a letter with the court stating that Petitioner's case had "no merit" and requested withdrawal from the case.  The Honorable Judge Webster J. Keogh concurred with counsel's assessment and informed Petitioner, on March 13, 2001, of his intent to dismiss the petition without a hearing. Petitioner sought an extension of time to respond to the imminent dismissal and requested a copy of his counsel's no merit letter and portions of the trial transcript.  On April 16, 2001, the court denied Petitioner's request for an extension, dismissed his PCRA petition, and allowed counsel to withdraw.

Petitioner appealed pro se to the Superior Court.  On May 19, 2003, the Superior Court of Pennsylvania denied his PCRA appeal.  Subsequently, the Pennsylvania Supreme Court denied Petitioner discretionary review.  On May 20, 2004, Petitioner filed the instant Petition.

---

[Petitioner] then entered the office area on the lower level of the restaurant. His cohort held a gun to the head of the manager John Frangos, and demanded that the bartender Larry Romano turn over the day's receipts.  He then proceeded to the cash register, and took all the money.  Both men then fled the restaurant.
Commonwealth v. Caballero, No. 0081, slip op. at 1 (Ct. Com. Pl. Phila. Cty. July 31, 1997) (citations omitted).

2

The Petition presents seven grounds for relief: (1) the trial court violated Petitioner's due process rights by refusing to permit evidence of his reputation for truthfulness; (2) the trial court violated his due process rights by refusing to permit an alibi defense; (3) he was denied effective assistance of counsel at all stages of representation based on his trial counsel's failure to give timely notice of an alibi defense and the subsequent failure of appellate and PCRA counsel to raise the issue on appeal; (4) he was denied effective assistance of appellate and PCRA counsel based on failure to challenge the trial court's erroneous jury instruction; (5) he was denied effective assistance of counsel at all stages of representation based on trial counsel's failure to request a cautionary jury instruction on witness identification and the subsequent failure of appellate and PCRA counsel to raise the issue on appeal; (6) the PCRA court violated his due process rights by failing to supply him with requested trial transcripts and other relevant documents; and (7) the PCRA court violated his due process rights by failing to supply him with complete and accurate trial transcripts.

This Court designated United States Magistrate Judge Carol Sandra Moore Wells to submit a Report and Recommendation on the Petition.  See 28 U.S.C. § 636(b)(1)(B); E.D. Pa. R. Civ. P. 72.1(I)(b).  On August 30, 2005, Magistrate Judge Wells issued a Report recommending that the habeas petition be denied.  Petitioner filed Objections to the Report on October 3, 2005, and Respondents filed a response to the Objections on October 17, 2005.  Thereafter, the Court held two evidentiary hearings on the issue of trial counsel's alleged ineffective assistance for failing to file timely alibi notice.  Petitioner filed a post-hearing brief on January 2, 2008, and Respondents filed a response on February 12, 2008.

II.     **ANALYSIS**

Petitioner raises a series of objections to the Report and Recommendation.  Specifically, he argues that the magistrate judge erred in determining the facts underlying his claims of PCRA court error and in finding that his ineffective assistance claim based on failure to give timely alibi notice was "previously litigated" in state court.  This Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, the Court also has the discretion to review the entire Report and Recommendation de novo.  See, e.g., Thomas v. Arn, 474 U.S. 140, 154 (1985) (explaining that while 28 U.S.C. § 636 "does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard").  Because Petitioner's Objections encompass many of his original claims, and because Petitioner attempts to use the factual bases for several claims to excuse his procedural default for other claims, the Court will review the Report and Recommendation de novo.

A.      **Claim One:  The Trial Court's Preclusion of Petitioner's Reputation for Truthfulness**

In his first claim, Petitioner argues that the trial court erred by refusing to allow him to introduce evidence of his reputation for truthfulness.  The trial court found that Petitioner had never been impeached by evidence of a bad reputation for truth and veracity and, pursuant to Pennsylvania's evidentiary rules, denied him the opportunity to rehabilitate his reputation.  Magistrate Judge Wells found, and the Court agrees, that even assuming the state court erred in its application of state evidence law, such an error would be beyond the purview of this Court.

4

See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir. 1992) ("[A] state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

Moreover, to the extent that Petitioner now attempts to raise his claim of trial court error as a violation of his federal due process rights, such a claim is defaulted.  Before the Court can grant federal habeas relief, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  The exhaustion doctrine requires that a petitioner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  Id. at 845.  In order to afford the state courts a "full opportunity" to resolve a constitutional issue, a petitioner must raise the claim in state court and fairly present it as an alleged constitutional violation.  See Duncan v. Hunter, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").  As the Supreme Court has explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."  Id. at 366 (citing Anderson v. Harless, 459 U.S. 4 (1982)).

5

In this case, Petitioner failed to fairly present his constitutional claim because he never alleged to the state courts that his due process rights were violated by the exclusion of reputation evidence.  He claimed only a violation of state law, and the state courts ruled on the basis of state law.  Accordingly, Petitioner's claim has not been exhausted, and because the court to which he would have been permitted to present his claim would now find such a claim untimely, his claim has been procedurally defaulted.  See, e.g., McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999) ("When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'  In such cases, however, applicants are considered to have procedurally defaulted their claims." (quoting 28 U.S.C. § 2254(b)(1)(B)(i))).

The Court may excuse Petitioner's procedural default and consider the claim only if he can show either (a) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (b) a fundamental miscarriage of justice if the claim is not considered. Coleman v. Thompson, 501 U.S. 722, 750 (1991).  To establish cause for a procedural default, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish actual prejudice, Petitioner must "show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  To meet the more exacting "fundamental miscarriage of justice" standard, Petitioner must demonstrate that "a constitutional violation has probably

resulted in the conviction of one who is actually innocent." Id. at 496.  A petitioner seeking to excuse the default under this standard must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).

With respect to his first claim, Petitioner has neither alleged nor demonstrated that an external impediment prevented him from pursuing a due process challenge to the introduction of his reputation evidence.  Accordingly, he has failed to establish cause for his procedural default, and the Court need not reach the prejudice inquiry.  See Smith v. Murray, 477 U.S. 527, 533 (1986).  Moreover, Petitioner has not come forward with any new evidence to excuse his default under the fundamental miscarriage of justice standard.  Accordingly, Petitioner's due process claim relating to the exclusion of his reputation evidence is defaulted, and he is not entitled to relief on this claim.

### B.    Claim Two:  Trial Court's Refusal to Permit Alibi Witnesses

Petitioner also argues that the trial court erred in denying him the opportunity to present two alibi witnesses.  The trial court barred Petitioner's alibi witnesses from testifying because of a state alibi notice rule that requires the defense to disclose any intention to call alibi witnesses within 30 days of arraignment.[2]  Petitioner was arraigned on December 15, 1995, thus starting the notice limitation period.  See Commonwealth v. Caballero, No. 0081, slip op. at 13 (Ct. Com. Pl. Phila. Cty. July 31, 1997).  On March 1, 1996, defense counsel informed the trial court that no

---

[2]    The trial court based its ruling on then-Pennsylvania Rule of Criminal Procedure 305, which is now Pennsylvania Rule of Criminal Procedure 567.  Rule 567 retains the same thirty-day alibi notice requirement.  See Pa. R. Crim. P. 567; Pa. R. Crim. P. 579.

alibi witnesses would be called at trial.  Id.  On May 20, 1996, however, during a pretrial

suppression hearing, defense counsel gave his first notice of intention to call alibi witnesses.  Id.

The trial court, exercising the discretion afforded it by the state rule, denied Petitioner's request

to call alibi witnesses, a decision that was affirmed on appeal.

Magistrate Judge Wells found that, on the merits, the state courts correctly resolved this

issue of Pennsylvania law.  The Court need not reach the merits, however, as the claim Petitioner

raised in state court was that the trial court erred in application of state criminal procedure rules.

As explained above, the Court "may not issue the writ [of habeas corpus] on the basis of a

perceived error of state law."  Pulley v. Harris, 465 U.S. 37, 41 (1984).  Although Petitioner now

frames the claim as a due process violation, he failed to raise the constitutional issues relevant to

this claim at the state level.  Consequently, any constitutional claim he seeks to raise is

unexhausted and procedurally defaulted.  See McCandless, 172 F.3d at 260.  Petitioner makes no

allegations to support a finding of cause and prejudice or of a fundamental miscarriage of justice.

Accordingly, any due process claim he seeks to make is foreclosed by a procedural default, and

he is not entitled to habeas relief based on this claim.

**C.      Claim Three:  Layered Ineffective Assistance Based on Failure to Give**
        **Timely Alibi Notice**

Petitioner's third claim is that PCRA counsel was ineffective for failure to claim

ineffective assistance of appellate counsel for failure to claim ineffective assistance of trial

counsel based on trial counsel's failure to give timely alibi notice.  Petitioner claims that he met

with his trial counsel once for pretrial consultation on January 14, 1996, and that during this

meeting, he directed him to pursue an alibi defense.  According to the Petition, he informed his

8

counsel that he spent every Sunday at home with his family and that on the day of the incident, he

was at home with his mother Rosa Perez and brother Jose Infante.  At an evidentiary hearing

before the Court on September 14, 2007, Petitioner testified that he told his attorney, "I was at

home with my family . . . with my mother and brother" and that he "mentioned to [trial counsel]

the address and the phone number" of the two witnesses.  9/14/07 Hr'g Tr. 19-20.  Petitioner

alleges that he did not meet with trial counsel again until May 20, 1996, the date trial counsel

unsuccessfully attempted to give alibi notice.  Id. at 20.[3]  Petitioner argues that despite requesting

an alibi defense and giving his counsel the contact information for the two alibi witnesses, trial

counsel failed to pursue the defense, thus rendering ineffective assistance.  Petitioner further

argues that both appellate counsel and PCRA counsel were likewise ineffective for failure to

pursue the claim of trial counsel's ineffectiveness on appeal.

Petitioner unsuccessfully raised this claim in his pro se PCRA petition.[4]  On appeal, the

Superior Court affirmed the PCRA court's ruling, finding that pursuant to 42 Pa. Cons. Stat. §

9543(a)(3), the ineffective assistance claim was rejected properly because "[a] petitioner cannot

obtain post-conviction review of claims previously litigated on appeal by alleging ineffective

---

[3]      Trial counsel, although unable to recall most details about the case, specifically remembered that "[Petitioner] did not give [him] any alibi information prior to the date of [the motion to suppress] hearing" on May 20, 1996.  9/14/07 Hr'g Tr. 11.  Trial counsel also explained that he was never contacted by any family members "indicating that they could be alibi witnesses," and although he could not recall giving Petitioner a business card or other contact information, he explained that "the Court appointments [office] has the names of the attorneys and if you call information there, they'll give you the name and phone number and address of the attorney."  Id. at 15-16.

[4]      In his PCRA petition, Petitioner framed his ineffective assistance claim as a violation of both the Pennsylvania and United States Constitutions.  Accordingly, this claim does not present the exhaustion problem encountered by Petitioner's first two claims because the federal question was "fairly presented" to the state courts.

assistance of prior counsel and presenting new theories of relief to support previously litigated

claims." Commonwealth v. Caballero, No. 1513, slip op. at 5-6 (Pa. Super. Ct. May 19, 2003)

(citing Commonwealth v. Beasley, 678 A.2d 773, 778 (Pa. 1996)).  According to the Superior

Court, Petitioner had litigated the issue of whether the trial court properly barred the alibi

testimony, and his ineffective assistance of counsel claim was a variant of this "previously

litigated" claim.  Accordingly, the Superior Court declined to consider the claim on the merits.

Magistrate Judge Wells found that Petitioner's ineffective assistance claim is subject to a

procedural default because the state courts had found it "previously litigated."

### 1.    Procedural Default

In his Objections, Petitioner argues that despite the findings of the state courts, his

ineffective assistance claim was not "previously litigated" and is therefore not defaulted.[5]  More

relevant to the Court's analysis, however, is that claims deemed "previously litigated" in PCRA

court are not procedurally defaulted for federal habeas purposes.  See, e.g., Moore v. Beard, 2007

---

[5]        As Petitioner explains, he did litigate whether the trial judge properly applied the
alibi notice provisions of then-Rule 305 when prohibiting the witness testimony, but he did not
litigate the claim of whether his trial counsel was ineffective for failing to file timely notice.  The
Superior Court declined to consider Petitioner's ineffective assistance claim, relying on a series
of Pennsylvania cases that considered an ineffective assistance of counsel claim to be an
"alternative theory" of the "previously litigated" claim.  E.g., Beasley, 678 A.2d at 778.  Thus,
Petitioner's claim of ineffective assistance was treated as a mere variant of his trial court error
claim.  The Pennsylvania Supreme Court has since abandoned this approach, explaining that an
ineffective assistance of counsel claim under the Sixth Amendment "raises a distinct legal
ground for purposes of state PCRA review" and should be reviewed as a separate claim rather
than a variant of a "previously litigated" claim.  Commonwealth v. Collins, 888 A.2d 564, 573
(Pa. 2005).  As the Pennsylvania Supreme Court recognized, and as Petitioner's objections make
clear, the former approach was problematic because "claims of trial counsel ineffectiveness that
were based on an issue that was raised on direct appeal were precluded as 'previously litigated';
and the merit of the claim relating to counsel's conduct and the adequacy of his representation
were never examined."  Id. at 571.

U.S. Dist. LEXIS 91025, at *6 n.1 (M.D. Pa. Dec. 11, 2007) ("A finding that a claim was 'previously litigated' carries no implication of procedural error on the petitioner's part, and instead, indicates that the petitioner previously raised the claim, but was unsuccessful."); Boyd v. Nish, 2007 U.S. Dist. LEXIS 7176, at *9 (E.D. Pa. Jan. 25, 2007) ("Petitioner presented both his ineffective assistance of trial counsel and his ineffective assistance of appellate counsel claims for PCRA review and in his appeal . . . to the Superior Court. . . . Where the Superior Court found Boyd's claims to be 'previously litigated,' those claims are not procedurally defaulted for the purpose of federal habeas review."); Williams v. Brooks, 435 F. Supp. 2d 410, 421 (E.D. Pa. 2006) ("Because the 'previously litigated' rule is not a procedural requirement, it does not trigger the procedural default doctrine on habeas review.").[6]  Because the state courts were presented with the opportunity to hear the claim but declined to do so, the Court may consider Petitioner's claim on the merits.  See, e.g., Williams, 435 F. Supp. 2d at 423 ("[T]he state courts' application of the 'previously litigated' bar to consideration of [an ineffective assistance] claim does not

---

[6]      As one court in this district has explained,
When a PCRA court rules that an issue has been previously litigated, either the issue has been raised on direct appeal and thus would not be procedurally defaulted, or it should have been heard by the PCRA court and was not. . . . A finding that a PCRA claim is 'previously litigated' carries no implication of procedural error on the petitioner's part.  It solely indicates that the petitioner had previously raised the claim, and lost.  Therefore, unlike genuine procedural requirements, such as statutes of limitations or rules governing waiver, the 'previously litigated' rule is not one that a petitioner can somehow obey in order to obtain PCRA review of his claim.

Williams, 435 F Supp. 2d at 421.  The fact that Pennsylvania imposes a limitation on the types of claims that can be heard on PCRA review does not mean that a federal court is likewise barred from reaching "previously litigated" claims.  Rather, the PCRA rule is "the state's own forfeiture of its opportunity to hear" previously litigated claims, and federal review of such claims "implicates no comity or federalism concerns."  Alford v. Johnson, 2006 U.S. Dist. LEXIS 8073, at *17-18 (E.D. Pa. Mar. 1, 2006).

make the claim procedurally defaulted for the purposes of federal habeas review.  The state

courts were presented with an opportunity to consider the claim and declined it."); Alford, 2006

U.S. Dist. LEXIS 8073, at *16 ("[W]here the 'previously litigated' rule has barred PCRA review,

there need not be any concern about intruding upon the state courts, because the state court was

duly given—and decided to pass upon—its opportunity to hear the claim.").  Accordingly, the

Court will not adopt the Report and Recommendation insofar as it found this claim defaulted,[7]

and will instead consider Petitioner's claim on the merits.

### 2.    Merits Analysis

To the extent that Petitioner attempts to raise a claim of ineffective assistance of PCRA

counsel, this portion of his claim is not cognizable on federal habeas review.  See 28 U.S.C. §

2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral

post-conviction proceedings shall not be a ground for relief in a proceeding arising under section

2254.").[8]  Accordingly, the Court will address only the remaining layered ineffectiveness

---

[7]    The Report and Recommendation relied on the Third Circuit's decision in
Sistrunk v. Vaughn, 96 F.3d 666 (3d Cir. 1996), to support its finding that a claim deemed
"previously litigated" in PCRA court is procedurally defaulted for habeas review.  In Sistrunk,
however, the Third Circuit was applying a previous version of the PCRA that also defined
"waived" claims as "previously litigated."  See id. at 669 n.1 (explaining that the 1995
amendment to the PCRA created a separate "waiver" category for claims decided at trial but not
appealed).  The Sistrunk Court found that a Batson claim litigated at trial but not appealed (i.e.,
"waived" under the current version of the PCRA) was procedurally defaulted.  Id. at 674-75.  As
the Court explained in a footnote, its holding was confined to those cases where a waiver
occurred, not where a claim was deemed "previously litigated" as the phrase is defined in the
current incarnation of the PCRA.  See id. at 674 n.11; see also Alford, 2006 U.S. Dist. LEXIS
8073, at *15 n.9 (explaining that the holding of Sistrunk applies to waived claims but not to
"previously litigated" claims).  Accordingly, Sistrunk does not foreclose consideration of
Petitioner's clam.

[8]    Petitioner layered the ineffective assistance of PCRA counsel claim in order to
avoid waiver under 42 Pa. Cons. Stat. § 9544(b) for failing to assert the underlying ineffective

claim—that is, appellate counsel's ineffectiveness for failure to raise the issue of trial counsel's

ineffectiveness—on the merits, as this claim was fairly presented to the state courts.[9]  Because

the state courts had the opportunity to consider this claim but declined to do so, the deferential

standard of review mandated by 28 U.S.C. § 2254(d) for claims "adjudicated on the merits" does

not apply, and the ineffective assistance analysis is de novo.  See, e.g., Rolan v. Vaughn, 445

F.3d 671, 678 (3d Cir. 2006) ("If the petitioner's legal claims were presented but not addressed

by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo

review of the claim."); Williams, 435 F. Supp. 2d at 425 ("Because the state courts never reached

this claim on the merits, finding that it was not raised on direct appeal, yet rejecting it as

previously litigated on collateral appeal, my review of counsel's alleged ineffectiveness . . . is de

novo.").

    Petitioner's claim of ineffective assistance of appellate counsel is analyzed under the

familiar standard of Strickland v. Washington, 466 U.S. 668 (1984), and in order to prevail, he

must prove (a) deficient performance by counsel and (b) a reasonable probability that, but for the

deficient performance, the conviction would have been reversed on appeal.  See Buehl v.

Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999).  In order to determine whether appellate counsel

was ineffective, the Court will examine whether trial counsel was ineffective for failure to file a

---

assistance claims in the original PCRA petition.  The Superior Court found that Petitioner
managed to avoid waiver by layering the allegations of error in terms of trial, appellate, and
PCRA counsel's ineffectiveness, but as discussed above, declined to address the claim because
of the "previously litigated" rule.

[9]      Respondents agree that the claim properly before the Court is whether or not
appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness.
See Resp. to Pet'rs Post Hr'g Br. (docket no. 37), at 15-16.

timely alibi notice, as appellate counsel cannot render ineffective assistance for failing to raise a

meritless argument on appeal.  See, e.g., Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998)

("[O]n direct appeal, counsel assistance does not become ineffective by failing to raise an issue

when convincing Supreme Court case law shows it to be without merit."); Jackson v.

DiGuglielmo, 2006 U.S. Dist. LEXIS 24516, at *35 (E.D. Pa. Apr. 27, 2006) ("Because the

ineffectiveness of trial counsel claims were without merit, appellate counsel was not ineffective

in failing to raise them." (citing United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000))).

> Under Strickland,
>
> [a] convicted defendant's claim that counsel's assistance was so defective as to
> require reversal of a conviction or death sentence has two components.  First, the
> defendant must show that counsel's performance was deficient.  This requires
> showing that counsel made errors so serious that counsel was not functioning as
> the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.

466 U.S. at 687.  Even assuming that Petitioner has proven that trial counsel rendered deficient

performance in failing to give timely alibi notice,[10] he has failed to demonstrate sufficient

prejudice under Strickland.  At two evidentiary hearings before the Court, Petitioner's alibi

witnesses, his mother and his brother, gave testimony as to his whereabouts on the night of the

robbery.  The first witness, Rosa Perez, testified that Petitioner "always stayed home watching

---

[10]      As noted above, Petitioner and trial counsel disagree as to whether trial counsel
had notice of the alibi witnesses.  Petitioner also argues that even if trial counsel did not have
actual notice of the witnesses, he had a duty to investigate Petitioner's innocence claim and that
if trial counsel had so investigated, he would have discovered the existence of the witnesses.  The
Court need not reach these arguments, however, because it finds that trial counsel's allegedly
deficient performance did not deprive Petitioner of his right to a fair trial.  See, e.g., Rolan, 445
F.3d at 678 ("A court can choose to address the prejudice prong before the ineffectiveness prong
and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced.").

TV with the whole family" on his days off from work.  9/14/07 Hr'g Tr. 28.  As Ms. Perez

explained, "From the moment [Petitioner] got up in the morning, he'd turn on the TV and watch

TV all day."  Id.  However, she could not recall specifically the date of the robbery.  Id. at 29.

Petitioner's second witness, Jose Infante, testified that he was not at home on the night of

the robbery but was working across the street at a pizza parlor as a cook and a delivery driver.

10/31/07 Hr'g Tr. 12.  Mr. Infante testified that because the family home was located in a

dangerous neighborhood, he would "always look out the window" of the pizza parlor to check up

on his family.  Id. at 5.  Mr. Infante also explained that while on duty at the pizza parlor, he

frequently returned home to use the restroom and to eat.  Id. at 13-14.  Although he was not at

home at 9:45 when the robbery occurred, he testified that he checked up on his mother at "maybe

8:30" and returned approximately an hour or an hour and a half later.  Id. at 18.  During his visits

that evening, he saw Petitioner at home watching television.  Id. at 5-6.  From his vantage point

at the pizza parlor, Mr. Infante did not see Petitioner leave the family home, although he noted

that it was difficult to see the house at night and that the home had a rear fire exit he could not

see well from the pizza parlor.  Id. at 14-15.  On cross-examination, Mr. Infante also admitted

that he occasionally left the pizza parlor to deliver pizzas in the neighborhood.  Id. at 12.

The Court finds that, considering the totality of the evidence presented to the jury,

exclusion of this testimony did not deprive Defendant of a fair trial.  See United States v. Gray,

878 F.2d 709, 711 (3d Cir. 1989) ("The effect of counsel's inadequate performance must be

evaluated in light of the totality of the evidence at trial.").  In weighing the value of the alibi

testimony, the Court notes that "alibi testimony by a defendant's family members is of

significantly less exculpatory value than the testimony of an objective witness."  Romero v.

Tansy, 46 F.3d 1024, 1030 (10th Cir. 1995).  Moreover, neither witness testified that he or she

actually saw Petitioner in the home at the time of the robbery.  Given the overwhelming evidence

presented at trial—including, inter alia, Petitioner's signed confession, 5/22/96 Trial Tr. 139-44;

eyewitness testimony from two restaurant employees describing Petitioner's physical appearance,

id. at 44, 83-84, 90; and eyewitness testimony from two hotel employees identifying Petitioner in

open court, id. at 94, 191—the proffered alibi testimony fails to establish the level of prejudice

necessary for a Sixth Amendment violation.  As the Strickland Court explained, "It is not enough

for the defendant to show that the errors had some conceivable effect on the outcome of the

proceeding."  466 U.S. at 693.  Rather, Petitioner must demonstrate "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different."  Id. at 694.  Based on the totality of the evidence, the Court finds that Petitioner has

failed to establish a reasonable probability that he would have been acquitted had his alibi

witnesses been permitted to testify.  Because Petitioner's ineffective assistance of trial counsel

claim is without merit, his claim of ineffective assistance of appellate counsel also fails.

Accordingly, the Court cannot grant him relief on this claim.

### D.      Claim Four: Appellate Counsel's Ineffectiveness for Failure to Challenge an Erroneous Jury Instruction

Petitioner next argues that he was denied his Sixth Amendment right to effective

assistance of appellate counsel because his appellate counsel failed to challenge the trial court's

jury instructions regarding his confession.[11]  Specifically, Petitioner objects to the trial court's

---

[11]      As with claim three, supra, the Court will not consider the portion of the claim
relating to PCRA counsel's alleged ineffectiveness.  Accordingly, the Court will consider the
claim as one of appellate counsel's ineffectiveness.

instructions in response to two questions posed by the jury during deliberations:

1.      Does a violation of a person's rights have any bearing on the verdict (reasonable doubt)?
2.      Is it the jury's job to validate or invalidate the confession?

5/24/96 Trial Tr. 10.  The trial judge answered the jury's questions as follows:

> First, this jury's job is not to come to any legal determination as to whether there has been a violation of a person's rights or not.  It is not this jury's job to either validate or invalidate the confession.  It is your job to determine whether this confession was, in fact, made and whether it is the defendant's voluntary confession, you see.

Id. at 11.  The trial court then repeated its previous instruction on how the jury was to consider the confession.  Petitioner's trial counsel objected to the trial court's answer and confession instruction as somewhat misleading, but appellate counsel did not pursue the issue on appeal. Petitioner contends that this instruction erroneously informed the jury that it could not invalidate his confession, thus requiring the jury to consider the confession during deliberations.[12]

The Superior Court of Pennsylvania found that Petitioner failed to raise this claim in his pro se PCRA petition and that this failure constituted a waiver precluding further review of the claim.  See Pa. R. App. P. 302(a).  In her Report and Recommendation, Magistrate Judge Wells found that because the state courts did not review the claim due to the waiver, the claim was procedurally defaulted, barring habeas review.  See, e.g., O'Halloran v. Ryan, 704 F. Supp. 70, 73-74 (E.D. Pa.) (finding that a petitioner who failed to comply with Pa. R. App. P. 302(a) in the state appellate process was subject to a procedural default on habeas review), aff'd without

---

[12]      Prior to trial, Petitioner filed a motion to suppress his confession, arguing that the detective who took the statement pointed a gun at his head and threatened him until he confessed. Although his motion to suppress was denied, Petitioner maintained this version of events at trial and argued that the confession was coerced.

opinion, 887 F.2d 262 (3d Cir. 1989).  Magistrate Judge Wells also found that Petitioner had

shown neither cause nor prejudice to excuse the default.[13]

In his Objections, Petitioner reiterates the argument he first raised in his Petition: that he

was prevented from amending his pro se PCRA petition and raising all relevant arguments

because the PCRA court refused to provide him with case materials and transcripts.[14]  Although

he does not refer explicitly to "cause" and "prejudice," Petitioner's argument is that an "objective

factor external to the defense impeded [his] efforts to comply with [Pennsylvania's] procedural

rule," thus establishing cause for the procedural default.  Carrier, 477 U.S. at 488.[15]  As Petitioner

explains in his Objections, he filed a motion to proceed pro se in the PCRA proceedings on

November 13, 2000 because he had been informed that his PCRA counsel intended to withdraw

from the case.  In this motion, Defendant requested that he be provided with all transcripts so he

could amend his pro se petition.  On March 13, 2001, the PCRA court issued a "notice of intent"

to dismiss the petition based on counsel's "no merit" letter, pursuant to Commonwealth v.

Finley, 550 A.2d 213 (Pa. Super. Ct. 1988).  On March 19, 2001, Petitioner filed a motion

---

[13]     It is unclear whether the magistrate considered Petitioner's alleged "cause" and
rejected it, or whether the magistrate found, as Respondents had asserted in response to the
Petition, that he failed to allege "cause" for his procedural default.  After reviewing the Petition,
the Court finds that Petitioner did allege "cause" for his failure in a section entitled "Regarding
the Exhaustion of State Remedies."  See Pet. 5.

[14]     Petitioner's claim of PCRA court misconduct also serves as the basis for ground
six of the Petition.  As discussed infra, this claim is insufficient to warrant habeas relief.
However, Petitioner's claim is also relevant as a possible excuse for his procedural default, and
the Court will consider it as such for claims four and five.

[15]     Petitioner does not attempt to use the "fundamental miscarriage of justice"
exception to excuse his default.  Consequently, the Court will address only the "cause" and
"prejudice" exception to the procedural default doctrine.

seeking all trial records, a copy of the Finley letter, and an extension of time in which to respond to the "notice of intent" to dismiss. Petitioner claims that the PCRA court ignored his motion and dismissed the petition on April 16, 2001 based on the Finley letter. According to Petitioner, the PCRA court's refusal to provide him trial transcripts and other documents prevented him from amending his petition to include the ineffective assistance of appellate counsel claim.

However, even assuming that Petitioner's version of events establishes "cause," he fails to establish "prejudice" sufficient to overcome the default. To establish prejudice sufficient to excuse a procedural default, "a petitioner advancing an ineffective-assistance claim must make the same showing that he would have been required to make to establish that the ineffective assistance itself was prejudicial." McCray v. Metrish, 232 F. App'x 469, 479 (6th Cir. 2007) (citing Joseph v. Coyle, 469 F.3d 441, 462-63 (6th Cir. 2006)); see also Prou v. United States, 199 F.3d 37, 49 (1st Cir. 1999) (finding that the "prejudice" standards for ineffective assistance of counsel and for procedural default purposes "are one and the same"). As explained above, a petitioner raising an ineffective assistance claim must demonstrate "a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Sistrunk, 96 F.3d at 670. In the instant case, the trial court informed the jury that its role was not to "invalidate" the confession in a legal sense, as the question of whether Petitioner's rights were violated had been decided by the trial court when it denied the motion to suppress.[16] Any

---

[16] Petitioner also claims that the trial court instructed the jury that it must consider evidence unrelated to the confession in deciding whether Petitioner's statement was voluntary, thus adding to the jury's confusion. The trial court issued no such instruction. Rather, the trial court instructed the jury that if it found the confession involuntary, it was not to consider the confession and was to weigh all other evidence to determine whether the remaining evidence was sufficient to convict. See 5/24/96 Trial Tr. 12-13.

possible confusion this instruction may have engendered was corrected in a later portion of the court's instruction:

> You are not coming back here, you are not going to be asked to say the defendant's rights were violated or not violated, not going to be asked to validate a confession or invalidate, not your job to make a specific finding . . . you should decide was the confession made or not, and if you find it was not, if you find it was the product solely of the detective's own version or if you find it came only at the point of [a] gun, then you cannot consider it.

5/24/96 Trial Tr. 13.  Accordingly, appellate counsel's failure to object to the trial court's instruction—an instruction that, even if misleading as given, was clarified subsequently—did not prejudice Petitioner within the meaning of Strickland.  In light of the overwhelming evidence presented against him at trial, Petitioner cannot demonstrate a reasonable probability that his appeal would have been successful if appellate counsel had raised this claim.  Thus, Petitioner is unable to overcome the procedural default, and the Court cannot grant him relief on this claim.

> ### E.   Claim Five:  Layered Ineffectiveness for Failure to Request a Kloiber Instruction

In claim five, Petitioner asserts that his appellate counsel was ineffective for failing to raise a claim of trial counsel's ineffectiveness for trial counsel's failure to request a cautionary jury instruction based on Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954).[17]   As the Pennsylvania Supreme Court explained in Kloiber,

> [W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

---

[17]      As with claims three and four, the Court will not consider Petitioner's argument that PCRA counsel was likewise ineffective for failing to raise this issue.

Id. at 826-27.  Petitioner argues that the two hotel employees who provided eyewitness testimony at trial failed to identify him as a former employee of Mick's Restaurant when first interviewed by police and that trial counsel was deficient for failing to request a Kloiber instruction based on this failure.  On PCRA appeal, the Superior Court found that, as with claim four, this claim had been waived pursuant to Pa. R. App. P. 302(a).  Magistrate Judge Wells found that, as with claim four, this claim had been procedurally defaulted and that the default could not be excused.

As discussed above, Petitioner claims that the PCRA court's failure to provide him with necessary materials establishes "cause" for the default.[18]  However, even assuming that he has shown cause, Petitioner cannot show prejudice because he cannot demonstrate a reasonable probability that, but for the error, "the result of the proceeding would have been different."  Sistrunk, 96 F.3d at 670.  As reflected in the trial transcripts, the two hotel eyewitnesses had a clear view of Petitioner and were unequivocal in their identifications: both witnesses identified Petitioner before trial in a photographic array and later identified Petitioner in open court as the man they had seen the evening of the robbery.  See 5/22/96 Trial Tr. 94, 99-100, 191, 197.  Petitioner contends that these eyewitnesses "failed" to identify him properly, however, because they did not recognize him as a former restaurant employee when examining the photo array.[19]

_____

[18]     Petitioner again makes no argument in support of a "fundamental miscarriage of justice" that would excuse his default.

[19]     Petitioner maintains that because the witnesses worked in the Bellevue Hotel, they would have seen him entering and leaving Mick's Restaurant as he went to and from work.  Accordingly, he argues that their failure to connect him to his former place of employment constitutes a failure to identify him.  At trial, however, one of the eyewitnesses specifically denied ever having seen Petitioner before viewing the photo array.  See 5/22/96 Trial Tr. 207.  The eyewitness, a doorman in the Bellevue, explained that he did not know every employee working in the hotel restaurants, and that restaurant employees entered and left from a different

Petitioner provides no case law, and the Court has found none, to support the argument that a Kloiber instruction is required when an eyewitness successfully identifies a suspect in a photo array but fails to state whether he or she may have seen the suspect before. Rather, Petitioner's complaints "relate to the credibility of the eyewitness testimony, not to the actual physical ability of the witnesses to observe from their respective positions in relation to the events." Commonwealth v. Paolello, 542 Pa. 47, 77 (Pa. 1995). Accordingly, because the witnesses had an unobstructed view of Petitioner and never failed to identify him, appellate counsel's failure to assert trial counsel's failure to request a Kloiber charge did not cause actual prejudice, as no such charge was required. See Commonwealth v. Upshur, 764 A.2d 69, 77 (Pa. Super. Ct. 2000) ("[I]dentification testimony need not be received with caution where it is positive, unshaken, and not weakened by a prior failure to identify."). Thus, because appellate counsel's alleged failure did not prejudice him under Strickland, his default cannot be excused.

**F.     Claims Six and Seven: Allegations of Due Process Violations by the PCRA Court**

In his remaining claims, Petitioner contends that the PCRA court violated his rights by, inter alia, refusing to provide him with requested documents, refusing to provide him with the "no merit" letter filed by PCRA counsel, and providing incomplete transcripts. Magistrate Judge Wells found that (a) on the merits, the Superior Court's factual findings on these claims were not objectively unreasonable and (b) that claims of due process violations in the PCRA court are not cognizable on habeas review. Petitioner makes a number of objections in which he argues that the magistrate judge erred by failing to address specific factual arguments raised in his Petition

---

door than the door he watched while on duty. Id. at 208-09.

and by adopting incorrect factual findings of the Superior Court.  The Court cannot address these

objections, however, as any allegation of error in the state post-conviction process is beyond the

scope of a habeas corpus proceeding.  As the Third Circuit has explained, "the federal role in

reviewing an application for habeas corpus is limited to evaluating what occurred in the state or

federal proceedings that actually led to the petitioner's conviction; what occurred in the

petitioner's collateral proceeding does not enter into the habeas calculation."  Hassine v.

Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998); see also Lambert v. Blackwell, 2003 U.S. Dist.

LEXIS 5125, at *116 (E.D. Pa. Apr. 1, 2003) ("Lambert's claims of errors by the PCRA court

fail to assert viable federal habeas claims.  The weight of authority holds that such errors are

simply not reviewable in a federal habeas proceeding.").  To the extent the Report and

Recommendation found these claims beyond the scope of habeas review, the Court adopts this

reasoning.


III.    CONCLUSION

        For the foregoing reasons, the Petition will be denied.  Because Petitioner has not made

the requisite showing of the denial of a constitutional right, a certificate of appealability will not

issue.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  An appropriate Order follows.

23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LOUIS CABALLERO** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 04-2190** |
| | : | |
| **LOUIS FOLINO, et al.** | : | |

**ORDER**

**AND NOW**, this    10th        day of March, 2008, upon consideration of the Report and
Recommendation of United States Magistrate Judge Carol Sandra Moore Wells (docket no. 11),
Petitioner's Objections thereto (docket no. 13), and Respondents' Response (docket no. 15); after
a de novo review of the pleadings and record in this case; and after holding two evidentiary
hearings, it is **ORDERED** that:

1.      The Report and Recommendation is **APPROVED** in part, **MODIFIED** in part,

        and **ADOPTED** in part;

2.      The Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is

        **DENIED** and **DISMISSED**; and

3.      Because there is no probable cause to issue a certificate of appealability, no

        certificate of appealability shall issue.

                                        **BY THE COURT:**


                                        _S/ BRUCE W. KAUFFMAN___
                                        **BRUCE W. KAUFFMAN,  J.**